UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAMONT L. GLOVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:23-cv-01491-JAR |
| ) | |
| JENNIFER ABDULLAH-CLEMONS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on self-represented plaintiff Lamont Glover's application to proceed in the district court without prepaying fees or costs. Having reviewed the application, the Court finds plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $19.00. Furthermore, after initial review, the Court will order plaintiff to file an amended complaint in accordance with the instructions set out below.

### Initial Partial Filing Fee

A prisoner bringing a civil action is required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted a daily ledger of credits and debits made to his STLJC inmate account from July 24, 2023 to August 24, 2023. Based on this limited data, it appears plaintiff has an average monthly deposit of $95.00. The Court will assess an initial partial filing fee of $19.00, which is twenty percent of his average monthly deposit. If plaintiff is unable to pay the initial partial filing fee, he must submit a current copy of his inmate account statement in support of his claim.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone*

*v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a pretrial detainee housed at the St. Louis City Justice Center (STLJC). He brings this civil rights action under 42 U.S.C. § 1983 against defendants alleging that the conditions of the STLJC are inhumane and violate his right to be free from cruel and unusual punishment. He names as defendants Jennifer Abdullah-Clemons (Commissioner, STLJC) and Tammy Ross (Deputy Commissioner, STLJC). He sues both defendants only in their official capacities.

Plaintiff states that since he entered the STLJC on July 4, 2023, he has been subjected to conditions that violate his constitutional rights. He states that he has slept in a holding tank on the ground without a mattress or covers for weeks at a time. He alleges these holding tanks are overcrowded with prisoners and have flies, mold, feces, and urine on the walls and ground. He states they are never cleaned.

He was then placed in a housing unit where 80 inmates have access to only four showers. Although there are eight showers in the unit, only four are operable. He states that the showers go months without being cleaned and sanitized properly because the STLJC does not equip the inmates with the proper cleaning supplies. He states that the drains in the four operable showers

do not drain, which forces inmates to stand in other inmate's urine, semen, and trash. He states inmates have gone weeks at a time without being able to shower.

Additionally, he states officers spray mace daily for little reason. They then leave the inmate in the cell for hours without any medical attention. He states, "[I]nmates are also being forced into a restrain[t] chair then dragged into the shower[,] left overnight, going without eating or being able to use the restroom." ECF No. 1 at 4.

As for medical attention, he states codes are called daily, but the medical staff does not take them seriously. "[I]nmates are left in our cells to die. Some inmate[s] have lost their life because of this matter." *Id.*

Plaintiff alleges that inmates often flood the unit, and staff does not allow the other inmates to push or clean the water out of their cells. "Inmates [are] forced to wake up and eat and go to sleep for weeks in flooded water. This water consist[s] of toilet water, urine, and other people'[s] feces." He states that then officers cut off water in the housing unit for days. *Id.* at 5.

Plaintiff states that after the riot on August 22, 2023, officers punished inmates by giving them "bird size and kindergarten size meals." Plaintiff states that at some point after the riot, inmates were "put on strip" in their cells with their cellmates and cuffed behind their backs for five hours. Plaintiff states this caused him a dislocated shoulder for which he received no medical treatment.

Plaintiff states the phones in housing unit 4B are never on, which blocks inmates from contacting the outside world, including their families and attorneys. He states that he is allowed one 10-minute call per month. Although inmates are supposed to get an hour of physical recreation

-4-

once a day, plaintiff states that staff keep them in their cells for 24 hours a day without physical recreation.

Plaintiff states that inmates are not allotted enough toiletries to do their laundry or wash their hands. The STLJC denies cleaning supplies, making inmates live in filth, flooded water, and dirt. Finally, he states officers do not allow inmates to get haircuts in housing unit 4B. He states he is forced to go months without grooming.

Plaintiff alleges he suffers mental injuries, including psychological damage resulting from living under inhumane conditions and "living like an animal." He states he has been in a depressed state, sleeping most of the day because of a lack of nutrition and small-sized portions at mealtime. As for his physical injuries, plaintiff suffered a dislocated shoulder following the riot when he was cuffed behind his back for five hours. He has not been provided any medical treatment. For relief, he seeks $1 million in compensatory damages.

## Discussion

Plaintiff is a pretrial detainee. The Supreme Court has determined that the government may detain criminal defendants before trial and "subject [them] to the . . . conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). To that end, there are two ways to determine whether conditions rise to the level of punishment. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). First, a plaintiff can show that his or her conditions of confinement were intentionally punitive. *Id.* Second, instead of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.* If conditions are arbitrary

or excessive, it can be inferred that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon pretrial detainees. *Id.* "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

In determining whether pretrial detention is unconstitutionally punitive, the United States Court of Appeals for the Eighth Circuit has applied the deliberate indifference standard. *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). In particular, the Eighth Circuit has explained that this standard is applicable when "the governmental duty to protect at issue . . . is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and well-being." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). The Eighth Circuit has held "that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety." *Id.* at 345.

Although plaintiff has alleged several serious issues at the STLJC that might rise to the level of deliberate indifference, his complaint is subject to dismissal for several reasons. First, he sues defendants in their official capacities only. In an official capacity claim, as opposed to an individual capacity claim, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Plaintiff has

not alleged any liability on the part of the City of St. Louis, and therefore his official capacity claims against the defendants are subject to dismissal.

Next, plaintiff sues the Commissioner of the STLJC, Jennifer Abdullah-Clemons, and the Deputy Commissioner of the STLJC, Tammy Ross. These defendants appear to be the top two officials at the STLJC. However, plaintiff has not made any specific factual allegations against these defendants. He does not name these defendants in his statement of his claim, and he alleges no facts demonstrating that these defendants were personally responsible for harming him.

"Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *see also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution"). "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Here, plaintiff has not shown any direct participation in the alleged constitutional violations by defendants Commissioner Abdullah-Clemons and Deputy Commissioner Ross. Therefore his claims against defendants are subject to dismissal.

Additionally, it appears that plaintiff is bringing some claims on behalf of other inmates. For example, plaintiff alleges that officers at the STLJC "spray mace on a daily basis . . . then staff leave inmates in cells for hours after being mace[d] without any medical attention." He also alleges

inmates are forced into restraint chairs and left in the shower overnight. He states medical codes are called, but not taken seriously by medical staff. Plaintiff does not allege that any of these wrongs have occurred to him. Plaintiff has no standing to bring claims on behalf of other prisoners. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (stating that "[a] prisoner cannot bring claims on behalf of other prisoners"). In other words, plaintiff must allege a personal loss. *See Sargent*, 780 F.2d at 1337. For this reason, these claims brought on behalf of other inmates are subject to dismissal.

Because plaintiff is proceeding as a self-represented litigant, and has presented serious allegations to the Court, he will be allowed to amend his complaint according to the instructions set forth below.

## Instructions for Amending Complaint

Plaintiff should print his amended complaint on the Court's civil rights form, which will be provided to him. He should then fill out the complaint form in its entirety, and ensure that it is signed. *See* Fed. R. Civ. P. 11(a).

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

The amended complaint should only include claims that arise out of the same transaction or occurrence. In other words, plaintiff should only include claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose a single defendant and set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a).

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. As discussed above, the failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005).

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. If plaintiff fails to file an amended complaint on a Court-provided form within twenty-one days in accordance with these instructions, the Court will dismiss this action without prejudice and without further notice to plaintiff.

### Motion to Appoint Counsel

Finally, plaintiff has filed a motion to appoint counsel. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability

of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed in the district court without prepaying fees and costs is **GRANTED**. [ECF No. 2]

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $19.00 within **thirty (30) days** of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court-provided form in accordance with the instructions stated above within **twenty-one (21) days** of the date of this Order.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel is **DENIED**. [ECF No. 3]

**IT IS FURTHER ORDERED** that if plaintiff fails to comply with this Order, the Court will dismiss this action without prejudice and without further notice.

Dated this 14th day of March, 2024.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE